{¶ 87} I respectfully dissent from the decision of the majority overruling the first and second assignments of error, and would instead sustain both.
 {¶ 88} Defendant timely objected to two photographs, State's Exhibits 9 and 10, which depict him after his arrest, lying on his stomach with his hands cuffed behind him and a quantity of money and a plastic bag containing drugs spread across his back.
 {¶ 89} The State argued that the two photos were admissible because they show the front porch of the house where Defendant was apprehended, on which he was shown lying, and a part of the door leading out of the house through which he had run. The State also argued that the photos were admissible to show how Defendant looked on the occasion of his arrest. However, those matters were not in issue.
 {¶ 90} Defendant admitted he ran out the front door when he heard a commotion at the rear of the house, and it's undisputed that he was arrested there. The only issue was whether Defendant or one of several other men who also ran out the door threw the bag containing drugs, as Defendant claimed.
 {¶ 91} Dayton Police Detective Keith Coberly testified that he saw Defendant throw the bag of drugs. The officer also testified that police officers placed the bag of drugs and money they found on his person onto Defendant's back before photographing him, and that the photos were taken pursuant to a standard policy of the Dayton Police Department pertaining to execution of a search warrant. (T. 83).
 {¶ 92} The trial court overruled Defendant's objections and admitted the two photographs in evidence. During his closing argument the prosecutor stated:
 {¶ 93} ". . . You know, if you listen closely, if you listen real closely, we got a little bit of mud on the police, didn't we? Didn't, was no hurt, it wasn't these police beat me up, not of that, but it was there, wasn't it? They came storming through my back door, they broke in the back door, they didn't announce, they threw me down on my side, they left me there for fifteen minutes . . . He cuffed he, that's what they're suppose to do, so you don't run away and guess what, he was already running away when the detective approached. The detective had a reason to fear flight. He left me there for 15 minutes. Well you know what,yeah we had to get photos of you. So that people can believe uswhen we come to court. They were doing their job. That's what they're suppose to do. They're suppose to document the location where they find somebody. Detective's doing what he is supposeto do. Defendant's doing what he's not suppose to do . . ." (T. 152). (Emphasis supplied).
 {¶ 94} In Deck v. Missouri (2005), 544 U.S. 622,125 S.Ct. 2007, 161 L.Ed.2d 953, the Supreme Court explained that while "the criminal process presumes that the defendant is innocent until proved guilty, . . . (v)isible shackling undermines the presumption of fairness of the factfinding process." Id.,544 U.S., at 630 (citations omitted).
 {¶ 95} In Deck, the defendant was brought into the courtroom in shackles. The holding in Deck doesn't prohibit the practice, but explains that "a criminal defendant has a (due process) right to remain free of physical restraints that are visible to the jury; (and) that the right has a constitutional dimension; but that right may be overcome in a particular instance by essential state interests such as physical security, escape, prevention, or courtroom decorum." Id.544 U.S., at 628.
 {¶ 96} Defendant Owings was not brought into the courtroom in shackles, but he was depicted to the jury in much the same way in State's Exhibits 9 and 10. Further, to add to the prejudice, the alleged fruits of his crime were spread across his back by police. No countervailing essential state interests were served in depicting him in that way to the jury. The prosecutor used the photographs to argue to the jury that they were taken "[s]o that people will believe us when we come to court;" in other words, to convince the jury that, because of what the pictures showed, Defendant was the person who threw the bag of cocaine. The photos are merely a pictorial version of the argument that "police don't arrest innocent people."
 {¶ 97} Any relevance these two "posed" photographs might have to the issues determinative of Defendant's guilt or innocence of the charge of possession of crack cocaine is so marginal as to border on the frivolous. Nevertheless, their improper implications were prejudicial, and the State exploited those implications to urge the jury to return a verdict of guilty. Because the probative value of the evidence was "substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury," the two photos were inadmissible. Evid.R. 403(A). The trial court therefore abused its discretion when it admitted State's Exhibits 9 and 10 into evidence, over Defendant's objections.